UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN D. HOLMES,

    Plaintiff,

v.                                                       Case No. 04-73830

ST. CLAIR COUNTY, MICHIGAN;          HONORABLE AVERN COHN
CORPORAL WALKER; CORPORAL
PHILIP; CORPORAL SCHWARTZ;
CORPORAL STROH; CORPORAL
WITKOWSKI; CORPORAL LABEAU;
OFC. DAVE SZELOG; SHARON
FURTAW, Jointly and Severally,

    Defendants.

and

ST. CLAIR COUNTY, MICHIGAN;
CORPORAL WALKER; CORPORAL
SCHWARTZ; CORPORAL STROH;
CORPORAL WITKOWSKI; CORPORAL
LABEAU; and OFFICER DAVE SZELOG,

    Defendants and
    Third-Party Plaintiffs,

v.

RANDY J. PLONKA, M.D.,

    Third-Party Defendant.

_____/

**MEMORANDUM AND ORDER
GRANTING THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING THIRD-PARTY COMPLAINT**

## I. Introduction

This is a 42 U.S.C. § 1983 case. Plaintiff Norman Holmes (Holmes) is suing Defendants St. Clair County, Michigan (the County); seven St. Clair County law enforcement officers: Corporals Walker (Walker), Philip (Philip), Schwartz (Schwartz), Stroh (Stroh), Witkowski (Witkowski), LaBeau (LaBeau), and Officer Dave Szelog (Szelog); and Sharon Furtaw (Furtaw), a registered nurse assigned to the St. Clair County Jail; for deliberate indifference to Holmes' medical needs while incarcerated at the St. Clair County Jail and for the individual defendants' alleged gross negligence, all presumably in violation of the Eighth Amendment.[1] The County and all of the officers except Philip bring a third-party complaint against Third-Party Defendant Randy Plonka, M.D. (Plonka) for indemnification.

Before the Court is Plonka's Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment.[2] For the reasons that follow, the motion is GRANTED and the Third-Party Complaint is DISMISSED.

---

[1] The Eighth Amendment's prohibition of cruel and unusual punishment places restraints on prison officials, including prohibiting "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

[2] Plonka styles his motion as one for summary judgment, but he cites the legal standards both for a motion to dismiss and a motion for summary judgment under Fed. R. Civ. P. 12(b)(6) and 56(c). Discovery has not commenced. Accordingly, the motion properly should be classified as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The motion will be analyzed under this legal standard.

## II. Background[3]

### A. Holmes' Injury

On January 12, 2004, Holmes was sentenced to a term of 93 days incarceration in the St. Clair County Jail for driving under the influence of alcohol. Five days later, Holmes complained of chest pains and was taken to Port Huron Hospital. Hospital staff issued him two prescriptions for medication. He was then released from the hospital and returned to the jail.

On January 26, 2004, Holmes experienced dizziness and a loss of balance while exercising. The next morning, he fell to the floor when trying to go to the restroom. He was unable to get up without the assistance of another inmate. Holmes then told Witkowski that he was experiencing numbness in his left leg and arm and requested to see a doctor. Holmes says that Stroh, Schwartz, and medical staff were notified about his condition, but he received no medical care at the time. Another inmate later told Witkowski that Holmes had to hold on to the wall to walk. LaBeau and Szelog then moved Holmes to an observation cell. He complained of having no feeling in his left arm and left leg and of difficulty walking. Holmes says that LaBeau and Szelog again notified medical staff about his condition, but he did not receive medical care. Holmes says that the jail's medical staff said that they would examine him the next day, January 28, 2004.

Holmes was kept in the observation cell overnight. He says that he repeatedly

---

[3] The background is gleaned from the complaint and the third-party complaint. All factual allegations are taken as true for purposes of this motion. See Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 451-52 (6th Cir. 2003).

requested help, but the officers on duty at the jail told him that there was nothing wrong with him.  At approximately 5:30 a.m. on January 28, 2004, Holmes told Walker that he was awake all night and could not get up from the floor without the assistance of his cell mates.  Holmes says he was allowed to use a telephone to call for outside help.  He also says that Walker noticed that Holmes had difficulty walking and struggled to maintain his balance.  Holmes complained to Walker of numbness and difficulty swallowing.  At approximately 8:00 a.m. that day, Plonka examined Holmes and told officers on duty that he should be taken to a hospital.  Holmes says that he was not taken to Port Huron Hospital for two hours after Plonka examined him.

Doctors at Port Huron Hospital diagnosed Holmes as having suffered a severe stroke aggravated by the delay in receiving medical care after displaying symptoms of a stroke.  Holmes was hospitalized from January 28, 2004 to February 8, 2004, when he was transferred to Mercy Hospital Inpatient Rehabilitation Center for therapy.

### B. Third-Party Complaint

Holmes filed this suit on September 29, 2004.  On December 15, 2004, defendants filed a third-party complaint against Plonka.  The third-party complaint alleges that Plonka provides medical services to inmates at the St. Clair County jail under a contract between the St. Clair County Sheriff's Department (the Sheriff's Department) and Plonka.  Defendants say that the individual officers determined the nature of Holmes' complaints and reported them to Plonka and Furtaw.  They say that any delay in Holmes obtaining medical treatment was a result of the decisions Ploonka and Furtaw made.

Defendants say that the contract between the Sheriff's Department and Plonka

provides that Plonka agrees to indemnify and hold harmless the County and the Sheriff's Department from any liability arising out of Holmes' lawsuit.

The contract, titled "Medical Services Agreement," and attached as Exhibit A to the third-party complaint, states that it was executed on October 3, 2003 by Plonka and the Sheriff's Department. The St. Clair County Administrator also signed the document. The contract provides, inter alia:

- That the Sheriff's Department will retain Plonka's services for the period October 3, 2003 through October 3, 2005;

- A description of the medical services Plonka agreed to provide at the St. Clair County jail;

- That Plonka must contract with a medical assistant to assist in providing medical services under the contract;

- That the County shall provide Plonka up to $6,000.00 during the life of the contract for legal fees associated with Plonka defending himself in civil rights litigation "brought as a result of his service to the Sheriff Department;" and

- That Plonka agrees "[t]o indemnify and hold the Department and County of St. Clair harmless from any loss claim suite [sic], damage, judgment or responsibility alleged or obtained by any person treated or dealt with by the Doctor pursuant Hereto, by any medical doctor, nurse, working for the doctor, or by any other employee or contractor of the Doctor. Further, the Doctor shall provide the Department with evidence of, and continue in effect a current policy of insurance for malpractice liability. The policy limits shall be no less than Two Hundred [sic] ($200,000.00) dollars per occurrence and Six Hundred Thousand ($600,000.00) dollars in the aggregate. The Department will be notified immediately in writing of any changes Therein."

Defendants say that, based on the indemnification clause in the contract, Plonka is obligated to indemnify the County from any liability arising out of Holmes' suit against defendants.

5

### III. Discussion

### A. Legal Standard

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

### B. Analysis

Plonka makes three arguments in support of his motion. First, he says that the individual officers cannot seek indemnification from him because they are not a party to the contract. Second, Plonka says that Michigan law precludes a party from contracting away liability for gross negligence. Finally, he says that the contract does not apply to civil rights claims arising from his providing professional services to inmates at the jail. The Court addresses these arguments seriatim.

### 1. Individual Officers as Parties to the Contract

Plonka says that the individual officers are precluded from seeking indemnification from Plonka based on the contract because they are not parties to the contract. Defendants say that the circumstances surrounding the contract demonstrate the parties intended the indemnification clause to encompass the individual officers.

Indemnity contracts are construed like any other contract. Badiee v. Brighton Area Schools, 695 N.W.2d 521, 531 (Mich. App. 2005). When contract language is clear and unambiguous, interpretation is limited to the actual words used, and parol evidence is inadmissible to prove a different intent. Burkhardt v. Bailey, 260 Mich. App. 636, 656 (2004).

The contract language here is clear and unambiguous. The contract expressly states that it was entered into by Plonka and the Sheriff's Department. While the County is not listed as a party to the contract in the introductory paragraph, the St. Clair County Administrator signed the contract and the County is mentioned in certain provisions of the contract (e.g., Plonka agrees to indemnify the Sheriff's Department and the County, the County agrees to provide Plonka with up to $6,000.00 for legal fees in connection with civil rights litigation, and the County agrees to provide one continuing education seminar per year). The contract is devoid of any reference to individual officers or employees of the Sheriff's Department.

Defendants urge the Court to interpret the contract to encompass the individual officers because, they say, the Sheriff's Department is an agency of the County that cannot sue or be sued. Therefore, defendants maintain, references in the contract to the Sheriff's Department "must logically refer to the Sheriff and his employees." This

argument is unavailing. If the contract were to encompass individual law enforcement officers, it could have been drafted as such. It was not. The unambiguous contract language makes no reference to employees of the Sheriff's Department; it only references (1) the department, and (2) the County, which is a legal entity that can be sued under 42 U.S.C. § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978) (holding that a body politic is a "person" within the meaning of § 1983). Because the individual officers are not parties to the contract, they have no basis for bringing a third-party complaint against Plonka for indemnification under the contract. Accordingly, the individual officers named as third-party plaintiffs (Walker, Schwartz, Stroh, Witkowski, LaBeau, and Szelog) are DISMISSED from the third-party complaint.

### 2. Gross Negligence

Plonka next says that because Holmes alleges gross negligence in the complaint, neither the County nor the individual officers can obtain indemnification under the contract between Plonka and the jail. Defendants say that Plonka's claim is belied by the contract language, which states that Plonka agrees to indemnify the County and the St. Clair County Sheriff's Department from "any loss claim suite [sic], damage, judgment or responsibility alleged or obtained by any person treated or dealt with by the Doctor. . . ." See Def. Ex. D. As discussed above, because the individual officers named as third-party plaintiffs are dismissed, the Court proceeds to analyze this argument only as it pertains to the County.

Under Michigan law, a party may not contract against liability premised on gross negligence. Shelby Mut. Ins. Co. v. City of Grand Rapids, 6 Mich. App. 95, 98 (1967). The complaint contains three counts: one against the individual officers and one against

the County for alleged deliberate indifference to Holmes' medical needs, and a third count alleging the individual officers' acts constitute gross negligence for which they should be held personally liable.  Compl. ¶¶ 24, 29, 32.  The language in the complaint makes clear that allegations of gross negligence only apply to Count III, which seeks to hold the individual officers personally liable for gross negligence.  Holmes makes no allegations of gross negligence in Counts I or II, let alone allegations of gross negligence on the part of the County.  Accordingly, the County has not attempted to "contract away" liability premised on gross negligence.

### 3. Contract as Applied to Civil Rights Claims

Finally, Plonka says that the Contract does not apply to civil rights claims like this case.  In support, he points to paragraph seven of the contract, which states:

> 7.    St. Clair County shall provide to Dr. Plonka up to $6000.00 during the term of this amended agreement for legal fee [sic] in defending himself in civil rights litigation brought as a result of his service to the Sheriff Department.  Copies of the actual bills showing the service rendered on an itemized basis shall be submitted prior to payment.  Should the $6000.00 dollar fund be exhausted during the 18 months of this agreement, it is clearly understood that the Doctor shall be responsible for any remaining expenses.

Plonka says that if he were required to indemnify the County for a civil rights action, there would be no need for paragraph seven of the contract (i.e., a provision that provides legal fees to Plonka for defending himself in a civil rights case).  Defendants respond by citing language from paragraph four of the contract, which provides that Plonka agrees to indemnify and hold the Sheriff's Department and the County harmless from, inter alia, "any" loss.  Defendants say that the term "any" clearly encompasses a case like this one.  The Court need not reach the issue of whether the contract provides

9

a blanket exclusion to civil rights cases.  Indeed, the Court need only look to the factual allegations in the complaint to conclude that the contract has no application to this case.

Holmes' three-count complaint contains two counts (Counts I and III) that allege wrongdoing on the part of the individual officers.  Because the Court concludes that the individual officers may not seek indemnification from Plonka under the contract, the only remaining count to examine is Count II, which alleges wrongdoing by the County:

> 28.   The violations of plaintiff Norman Holmes' constitutional rights as outlined above were caused by defendant St. Clair County's deliberate indifference in the training and supervision of its jail personnel, including training and supervision in the proper care and treatment of the medical needs of inmates housed at the St. Clair County Jail.

Compl. at ¶ 28.  Under this count, Holmes charges the County with failing to train and supervise its jail personnel.  Nothing in this count challenges Plonka's medical decisions or anything related to the care he provided Holmes.  Indeed, no reference to Plonka, direct or indirect, appears in any of the three counts, nor is Plonka named as a defendant in the complaint.

The indemnification provision in the contract between Plonka and the Sheriff's Department relates to lawsuits involving Plonka's treatment of inmates.  Count II does not make such an allegation; rather, Holmes' claim against the County is that it failed to train and supervise its jail personnel.  Accordingly, the County, by bringing its third-party complaint against Plonka, is essentially asking Plonka to indemnify it for the County's alleged constitutional violations (i.e., failing to train and supervise its jail personnel).  Such a result is untenable as a matter of public policy.  See Hurd v. Hodge, 334 U.S. 24, 35 (1948) (noting that agreements that tend to injure the public good will be found violative of public policy); L'Orange v. Med. Protective Co., 394 F.2d 57, 60 (6th Cir.

1968) (noting that courts should not hesitate in voiding agreements that tend to injure the public good or contravene an established interest of society).

SO ORDERED.

Dated:  July 18, 2005

      s/Avern Cohn
      AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, July 18, 2005, by electronic and/or ordinary mail.

      s/Julie Owens
Case Manager, (313) 234-5160